**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**


UNITED STATES OF AMERICA

v.                                              Case No. 3:06-cr-218-J-32HTS

ARCHIE JUNIOR SMITH

_____

### REPORT AND RECOMMENDATION[1]

### I.  Status

This cause is before the Court on the Motion to Suppress Evidence (Doc. #32; Motion), filed on December 18, 2006. The government filed opposition in response to the Motion on December 28, 2006. *See* United States' Response in Opposition to Defendant's Motion to Suppress Evidence (Doc. #46; Opposition). An evidentiary hearing was held before the undersigned on February 16, 2007.

### II. Testimony

**A. Sergeant Thomas Dyal**

Officer Dyal has worked for the Baker County Sheriff's Office for eighteen years. In addition to supervising five other deputies, Sergeant Dyal sometimes performs traffic interdiction.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

On June 11, 2006, at around 10 P.M., while in his marked Ford Explorer, which was parked next to a manned squad car facing in the opposite direction, he heard a vehicle spinning its tires approximately fifteen to twenty feet from his location. He followed the vehicle, an older black Chevrolet SUV driven by Defendant, and attempted to overtake it before it could reach the interstate. His efforts were unsuccessful despite light traffic, with Defendant failing to stop for at least one stop sign during the encounter. At one point, in an effort to catch up with Defendant, Officer Dyal attained a speed of eighty miles per hour on a street with a forty-five mile-per-hour limit.

Once on the interstate, the police officer topped out his speedometer at 118 miles per hour. He finally caught up to the vehicle when Mr. Smith encountered traffic just before the Nassau County line.[2] At that moment, Defendant was traveling at about eighty miles per hour.[3] Sergeant Dyal activated his blue lights and pulled the truck over. From start to finish, the event had spanned just over six miles.

---

[2] Had the stop occurred in Nassau County, Officer Dyal would have needed to contact that county's authorities in order to effectuate the arrest.

[3] Officer Dyal determined the SUV was speeding due to the actions needed to overtake it and his experience and training in visually estimating the speed of vehicles. He had passed a class that required visually assessing, within two miles per hour, the speed of moving cars.

- 2 -

With the black SUV about two feet from the edge of the highway,[4] the officer approached along the driver's side.  Another deputy positioned himself on the passenger's side.  Officer Dyal asked Mr. Smith for his driver's license.  Defendant failed to comply despite several requests, and also failed to put his right hand where Sergeant Dyal could see it.  Dyal then started to open the door with the intention of asking the driver to step out of the vehicle, but when he did so Mr. Smith pushed the door open, striking the officer and moving him toward the highway.  In response, Officer Dyal kicked the door back and, having seen a gun beside Mr. Smith's leg, ran to the rear of the stopped truck.  Defendant was revving the engine loudly, and seemed to be trying to get the vehicle in gear, with the second deputy still located on the passenger side of the truck.  Sergeant Dyal feared that, were the vehicle to begin accelerating and turning left to re-enter the highway, its rear end would swing to the right and strike the deputy.  Accordingly, Officer Dyal shot out the rear driver's side tire.[5]

Defendant was then removed from the vehicle, patted down, and the truck was searched.  Aside from any citations or charges arising from information obtained after the stop, Officer Dyal

---

[4] At another place in his testimony, Officer Dyal stated there was ample room between the truck and the passing line of traffic.

[5] The vehicle did not move despite having been placed in drive, and it was later discovered the drive shaft was broken.

issued Mr. Smith a traffic citation for careless driving, a civil infraction. He prepared a report shortly afterward. The report does not mention that Defendant spun his wheels, nor that he exceeded the speed limit or neglected to obey a stop sign.

Sergeant Dyal has never been reprimanded for his report writing, but one of his performance reviews indicated his reports have improved due to his including all pertinent information. Another evaluation correctly stated he sometimes leaves out witnesses and other information.

**B. Tony Thomas**

An auto mechanic who works out of his home, Mr. Thomas has personally viewed the SUV driven by Defendant. He has known Mr. Smith all of his life. On June 10, 2006, he examined the rear end of the vehicle and noticed a gear was bad. In his opinion, given the large tires on the truck and the condition of the rear end, its maximum speed would be about seventy miles an hour. Its driver could have spun its tires but that would likely have damaged the gears. If, on the other hand, the engine were revved up and shifted into drive, the rear end would have been blown to pieces, much like the condition Mr. Thomas observed it actually reached after the June 11 incident.

Mr. Thomas believes there is no way to say exactly how much stress the rear end could have taken before giving out. He

performed no scientific testing and had not taken the vehicle on the road to determine its top speed.

### C. Kevin Mitchell

Mr. Mitchell is a private investigator with prior law enforcement experience. Having reviewed the route traveled by Defendant on the day at issue, he opined there should have been enough time and distance for the police to make a traffic stop well before the interstate entrance. As for whether an officer can make a reliable visual determination of whether a vehicle is speeding, Mr. Mitchell conceded he could do so if, for instance, a car was proceeding at fifty miles per hour in a zone with a thirty mile-per-hour limit. He thought he recalled taking a class that required visual estimations to be correct within five miles per hour, but admitted the accuracy demanded may have been stricter.

### D. Defendant

Mr. Smith testified that on June 11, 2006, he was driving a recently purchased,[6] eight-cylinder 1994 Blazer with a cracked engine block and almost 240,000 miles on the odometer. It was equipped with large, super swamper tires. When driven, the truck would start to shake at around seventy-three miles per hour.

Defendant stopped properly at intersections and did not spin his tires. At no time during the incident did he exceed the speed

---

[6] Defendant stated he bought the vehicle with cash belonging to his girlfriend, who was the actual owner. Of the three weeks the SUV was in their possession, Mr. Smith drove it on at least ten days.

limit or otherwise violate any traffic law. Once the police switched on their blue lights, he pulled over, positioning his truck at least five to seven feet from the edge of the highway. The stop occurred near the Nassau County line.

Officer Dyal approached on the driver's side and the other deputy placed himself on the passenger's side. The police did not have their weapons drawn. When asked for his driver's license, Defendant provided it. As Mr. Smith was handing over the license, Sergeant Dyal requested that he step out of the truck. However, as he attempted to open the door, the officer kicked it shut. While Defendant was jumping back inside, his feet depressed the gas pedal. At that point, Officer Dyal ran back and shot out a tire. The Blazer's transmission remained in park and did not move, although the engine was running. In regard to the subsequently discovered drive shaft damage, Defendant believes the towing company was the culprit.

Once the tire had been shot, Mr. Smith jumped out of the vehicle and onto the ground. He was then handcuffed. A firearm was indeed in the Blazer, but it was under the seat, not where Officer Dyal alleges. Mr. Smith had noticed the gun for the first time as he was being pulled over, while he was trying to hide an empty beer bottle. He knew nothing about drugs being present in the vehicle.

### III. Summary of Argument

Defendant asks the Court "to suppress all evidence seized from his vehicle[7] and its fruits that the Government intends to introduce at trial[.]"  Motion at 1.  "The specific grounds for suppression are that the stop of Mr. Smith's vehicle had not been justified by either a reasonable suspicion[8] or probable cause to believe Mr. Smith was involved in illegal activity."  *Id.* at 2.  Additionally, Defendant suggests "the officer's traffic-violation ground for stopping his vehicle was pretextual."  *Id.* at 3.

### IV. Analysis

#### A. Probable Cause for the Stop/Pretextuality

Mr. Smith claims "there was no probable cause to support the . . . stop of his vehicle[,]" *id.* at 1, and in any event the stop was pretextual.  *Id.* at 3.  According to the United States, "[t]he initial stop . . . was supported by probable cause to believe that the defendant had violated one or more traffic laws of the State of Florida."  Opposition at 3.

"[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the

---

[7] As summarized *supra*, Mr. Smith testified his girlfriend was the vehicle's owner.  Nonetheless, the government has not contested his standing or reasonable expectation of privacy, and indeed "a driver using a vehicle with the permission of an absent owner has been found to possess a reasonable expectation of privacy therein."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

[8] As the government makes no argument the stop was based on reasonable suspicion, this allegation need not be addressed further.

multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (internal quotation marks omitted); *see also United States v. Griffin*, 109 F.3d 706, 707 (11th Cir. 1997) (per curiam); *United States v. Jennings*, No. 6:06-cr-120-Orl-31DAB, 2006 WL 2947846, at *2 (M.D. Fla. Oct. 16, 2006). A stop is reasonable under the Fourth Amendment when an officer has probable cause to believe a traffic violation has occurred, even if it is made as a pretext to search for drugs. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). The Eleventh Circuit has explained:

> [T]he constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer. The [*Whren*] decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred.

*United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) (per curiam) (internal citation and quotation marks omitted); *see also Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004) (discussing *Whren* and *Holloman*).

In the present case, the stop of the SUV driven by Mr. Smith was justified. Officer Dyal testified Defendant exceeded the speed limit to such a degree it required more than six miles and speeds reaching 118 miles per hour to catch up with him. The scenario

does perhaps seem surprising, given the age and possibly poor condition of the Blazer. It is also somewhat unsettling that many details failed to find their way into the police report written by Sergeant Dyal. That the stop occurred very near the Nassau County line likewise invites a measure of skepticism.

Nonetheless, it is not altogether implausible the eight-cylinder truck could have outpaced the police for six miles, particularly given the testimony that Defendant ignored at least one stop sign along the way. Even Mr. Smith's mechanic was uncertain how fast the truck could actually go before breaking down. Defendant himself admitted the vehicle was capable of traveling at over seventy miles per hour. It would merely shake at high speeds.

On balance, Officer Dyal was a more credible witness than Defendant. Mr. Smith's testimony about discovering the firearm only at the last moment and his account of how the Blazer's engine came to be revved are particularly open to doubt. Having observed the demeanor of the witnesses and considered their testimony as a whole, the undersigned will credit the sergeant in that it is found Officer Dyal observed Defendant committing a traffic infraction that provided probable cause to justify the initial stop.

**B. Probable Cause to Arrest/Intervening Circumstance**

The government contends that, assuming for the sake of argument probable cause for the stop was lacking, Defendant's

ensuing behavior supplied probable cause for his arrest and constituted "an intervening circumstance or act that render[ed] the subsequent search lawful."  Opposition at 3.

Where there is probable cause to believe an individual has committed a felony, a police officer is justified in making a warrantless arrest. *See United States v. Santa,* 236 F.3d 662, 676 n.20 (11th Cir. 2000) (citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976)).  In addition, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005) (internal quotation marks omitted); *see also Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004); *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001); *United States v. Allison,* 953 F.2d 1346, 1349-50 (11th Cir. 1992).

Here, the arrest occurred after Defendant pushed his SUV's door open in such a manner as to strike Officer Dyal and move him

backward toward the highway.[9] Moreover, Mr. Smith admits his feet shortly thereafter landed on the accelerator pedal of the SUV while the engine was running. Worthy of emphasis is the essentially undisputed fact that after the officer kicked the door of the truck, Defendant revved its engine. Whether the action was purposeful or not, it would cause a reasonable police officer to believe Defendant was attempting to flee. It is also undisputed Officer Dyal responded by running to the back of the truck and shooting out a tire. Only then was Defendant placed under arrest and the vehicle searched. Accordingly, under the circumstances, the arrest and subsequent search incident thereto took place lawfully, even if the initial stop was invalid. *See United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) (citing, *inter alia*, *United States v. Bailey*, 691 F.2d 1009, 1019 (11th Cir. 1982), which, at 1016-17, declared "that notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime[,]" and, at 1018, confirming that a search incident to such an arrest may legally proceed); *United States v. Thurmond*, No. CR05-2023, 2005 WL 2216896, at *3 (N.D. Iowa Sept. 12, 2005) (citing *Dawdy*); *cf. Unites States v. Lecroy,* 441 F.3d 914, 925 (11th Cir. 2006) (arrest for operation of unsafe vehicle led to

---

[9] The officer's version of this interaction is credited.

constitutionally permissible "search incident to the arrest, including a search of the passenger compartment of the car") (citing *New York v. Belton*, 453 U.S. 454, 460 (1981)).

### RECOMMENDATION

Based on the foregoing, it is recommended the Motion (Doc. #32) be **DENIED.**

**ENTERED** at Jacksonville, Florida, this 8th day of March, 2007.

/s/    Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record
    and pro se parties, if any